FAULKNER, Justice.
This is a sales tax case in which Thompson Tractor Company (taxpayer) appealed an assessment by the State Department of Revenue (State) to the Circuit Court of Jefferson County. The circuit court confirmed the assessment. On appeal, the Court of Civil Appeals affirmed the circuit court’s judgment. Thompson Tractor Co. v. State of Alabama, 432 So.2d 493 (Ala.Civ.App.1982). Following a denial of taxpayer’s application for rehearing, we granted certiorari.
Taxpayer was a dealer in heavy equipment manufactured by the Caterpillar Tractor Company. In addition to selling equipment for cash and on an installment sales basis, taxpayer leased equipment. Some of the leases contained a written option to purchase the equipment, and in other cases the right to purchase the equipment was based on an unwritten understanding. Each of the leases contained a cash sales price agreed on by taxpayer and its customers. When the total of the customer’s monthly rental payments equaled *498 or exceeded the cash sales price stated in the lease, plus a finance charge of 5% per annum, taxpayer transferred title to its customer and refunded any amount received by it in excess of the cash sales price plus finance charge. At any time during the term of the lease the customer could convert the transaction to a straight sale. If the customer chose to convert, the taxpayer credited the total amount paid in rental payments against the cash sales price stated in the lease. It then added a 5% per annum finance charge, which was computed on the unpaid balance of the cash sales price on a daily basis for the period which had elapsed from the commencement of the transaction until it was converted to a straight sale. The customer then paid cash or signed a promissory note for the unpaid balance of the sales price plus sales tax and finance charge.
On the transactions where the lease was converted as previously described, the taxpayer computed the sales tax as follows: During the period that the equipment was leased the taxpayer charged the customer m% of each rental payment pursuant to the rental tax statute. Section 40-12-222, Code of Alabama 1975. Upon conversion the taxpayer subtracted the amount paid in rent from the cash sales price to arrive at the unpaid balance of the sales price. It computed the lVá% sales tax on the unpaid balance of the sales price. See § 40-23-2(4), Code of Alabama 1975. The finance charge which had accrued up until that point was then added in to arrive at the pay-off amount necessary to convert the transaction to a straight sale. The pay-off amount was then either tendered in cash or the customer signed a promissory note for the pay-off amount, which he then satisfied on an installment payment basis by paying the payoff amount plus interest. The net effect of the taxpayer’s method of computation was to collect a combined rental and sales tax of U/2% of the total cash sales price and to allow the finance charge to escape taxation.
The issue in this case concerned the method of computing the sales tax. The State argued that the taxpayer should have charged sales tax on the finance charge attributable to the period during which the equipment was leased as well as on the unpaid balance of the cash sales price. The taxpayer took the position that the finance charges were not subject to taxation. Both parties agreed that, in instances where the pay-off after conversion was made on an installment basis pursuant to a promissory note, no sales tax was due on finance charges accruing from the conversion date forward.
The rental tax statute levies a tax on those engaged in the business of leasing or renting automotive vehicles of IV2 of the gross proceeds derived from the lease or rental of those vehicles. Section 40-12-222, Code of Alabama 1975. The term “automotive vehicles” includes equipment of the type involved herein. See § 40-23-l(a)(12), Code of Alabama 1975.
The sales tax statute levies a tax against the gross sales or gross receipts of those engaged in selling automotive vehicles at the rate of V/2% of the gross proceeds derived from the sales of those vehicles. Section 40-23-2(4), Code of Alabama 1975. “Gross receipts” is defined as:
“The value proceeding or accruing from the sale of tangible personal property, including merchandise and commodities of any kind and character, all receipts actual and accrued, by reason of any business engaged in, not including, however, interest, discounts, rentals of real estate or royalties, and without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid or any other expenses whatsoever and without any deductions on account of losses.” Section 40-23-l(a)(8), Code of Alabama 1975.
The sales tax statute does not require the seller to include interest which he receives from the buyer in gross receipts. The seller cannot, however, deduct from gross receipts any expenses incurred by the seller, such as cost of the property sold, cost of materials or labor, or interest which is paid by the seller as part of his overhead expense.
*499 The Department of Revenue’s sales and use tax rule Cl-021 speaks to the question of when interest is included in gross receipts. It states that when an established selling price includes an amount to cover interest, carrying charges or similar expenses, the entire selling price is included in the gross proceeds. If, however, the seller has an established cash price and, when selling a vehicle on an extended payment basis, he adds a separate finance charge, the finance charge is not included in the gross proceeds.
As the Court of Civil Appeals pointed out, the taxpayer and the State viewed the transactions from which the assessment arose differently. The taxpayer viewed each transaction as if it were a sale from the beginning. The State, on the other hand, considered the lease to be a separate transaction from the sale of the vehicles.
The taxpayer argued that for income tax and accounting purposes both it and its customers treated the transactions as sales from the beginning of each transaction. The customers took investment tax credits for the equipment, depreciated it, and took an income tax deduction for the amount of the finance charges as an interest expense. The taxpayer paid income tax on the finance charge it received.
The State maintained that two separate transactions were involved. Its position, which was accepted by the lower courts, was that the finance charges were not separate finance charges based on a sale effectuated by extended payments, but were a recovery of expenses incurred by the taxpayer in the operation of its rental business. In other words, that the interest in question was a part of the taxpayer’s operating expenses, which are included as a part of “gross receipts” as defined in § 40-23-1(a)(8).
In each of the transactions out of which this controversy arose, the taxpayer and its customer agreed on a sales price at the outset. The customer made incremental payments, which were credited against that sales price. It was the intention of the parties from the outset that once sufficient payments were made to cover the sales price plus interest, title would be transferred to the customer. Both parties treated the lease-purchases as single transactions for income tax and accounting purposes. Whether those incremental payments were denominated as rental payments or as payments made as a part of an installment sale, they were credited against a stated sales price and they constituted at least a portion of the consideration for the transfer of title to the customer. Since the rental payments were undisputably a part of the price of purchasing the equipment it seems to us that they were a part of the transaction which resulted in the passing of title from the taxpayer to its customer. To view the lease as an entirely separate transaction from the sale places form over substance.
The term “finance charge” has been defined as an amount imposed by one extending credit as an incident to, or a condition of, the extension of credit. See, e.g., 12 C.F.R. § 226.4(a) (truth-in-lending); § 5-19-1(1), Code of Alabama 1975 (consumer finance).
By allowing its customers to acquire title to the machines by making periodic payments, the taxpayer, in effect, extended credit to its customers. Since the finance charges at issue were calculated as interest on the unpaid balance of the sales price and were separately stated from the established cash sales price, the charges were not subject to sales tax. The fact that the agreement which governed the transaction was entitled “lease” instead of “installment sales contract” should not affect the substantive rights of the parties.
In ruling that each lease-sale constituted one transaction ultimately resulting in a sale, we are not out of step with modern legal thinking in the area of the sale of goods. Article Two of the Uniform Commercial Code, which governs the sale of goods in Alabama, defines a “sale” as “the passing of title from seller to the buyer for a price.” Section 7 — 2—106(1), Code of Alabama 1975. The fact that a part of that price was paid in incremental installments denominated as rent did not alter the fact *500 that those rental payments were a part of that price and hence a part of the sale.
Alabama’s Consumer Credit Statute defines a “credit sale” as follows:
“Any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property or services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.” Section 5-19-1(4), Code of Alabama 1975.
Admittedly, these were not consumer sales. The fact that the subject matter of the agreements was not within the category of consumer goods and the fact that the customers were corporations did not alter the nature of the transactions, however.
Finally, we note that the rental tax statute defines a “leasing” or a “rental” as a “transaction whereunder the person who owns ... personal property permits another person to have the possession or use thereof for a consideration ... without transfer of the title to such property.” Section 40-12-220(5), Code of Alabama 1975. Here, the payments made under the agreement were not made solely for the possession or use of the equipment. They were applied to the purchase price of the equipment and ultimately resulted, at least in part, in a transfer of title to the property.
In reaching our conclusion, we have not overlooked the State’s argument that the finance charges constituted recapture of an expense to the taxpayer, and, therefore, were includable in “gross receipts” under section 40-23-l(a)(8). Since the finance charges were paid to the taxpayer and no corresponding payments were made by the taxpayer, and since the charges constituted income to the taxpayer, we find the State’s argument that the finance charges were an expense to the taxpayer to be unsupported by the facts.
The decision of the Court of Civil Appeals is hereby reversed and the judgment ordering an assessment of taxes against the petitioner is hereby vacated.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
BEATTY, J., dissents.
SHORES, J., not sitting.